UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 91-101 ML |
| | : | |
| JOSEPH SMITH | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Joseph Smith ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on October 23, October 30, November 13, December 7, December 29, 2006, January 5, February 23, 2007, August 14, and August 29, 2008. On December 7, 2006, Defendant appeared before the Court and, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release as stated in the Petition for Warrant for Offender Under Supervision dated October 6, 2006 ("First Petition"), with the qualification that he had not possessed cocaine and marijuana with the intent to distribute as stated in the First Petition. On August 29, 2008, Defendant again appeared before the Court, waived a violation hearing, and admitted to further violations of the terms of his supervised release as stated in the Petition for Amended Warrant for Offender Under Supervision dated March 19, 2007 ("Second Petition"). Based on these admissions, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to a term of imprisonment

of twenty-one months.

## Background

On May 14, 1992, Defendant appeared before the Honorable Raymond J. Pettine, then Senior United States District Judge, following a guilty verdict on a charge of possession of a firearm by a convicted felon, in violation of Title 18 U.S.C. § 922(g)(1), a Class A Felony. Judgment of 5/14/92 (Document ("Doc.") #31) at 1. Defendant was sentenced to fifteen years imprisonment and three years supervised release. Id. at 2-3. A special assessment of $50 was also imposed. Id. at 1.

Supervised release commenced on November 12, 2004, with an expiration date of November 11, 2007. Supervised Release Violation Report dated 10/6/06 (the "First Violation Report") at 1.

## Facts and Travel

### I. First Violation

#### A. Factual Basis

On or about October 6, 2006, U.S. Probation Officer Clara M. King ("U.S.P.O. King") initiated the First Petition, alleging that Defendant had violated the following four conditions of his supervised release. See First Petition at 1-2.

**Standard Condition: While on probation, Defendant shall not commit another federal, state, or local crime. Defendant shall not illegally possess a controlled substance.**

On August 10, 2006, Defendant committed the offenses of possession with intent to deliver cocaine, possession with intent to deliver marijuana, and driving without a license as evidenced by his arrest by the Providence Police Department on that date. According to the police report, Defendant was observed driving a Chevrolet SUV with its right turn signal on and he turned left. The vehicle was pulled over and the police observed a female operator, later identified as Kendra Gomes, in the driver's seat.

When questioned, Defendant admitted to the police that he had been driving the vehicle and that he did not have a driver's license. Defendant was taken into custody after a brief struggle. While in the police vehicle, Defendant was moving around in the rear seat and complained that his handcuffs were too tight. The police then found cocaine and marijuana in the back seat where Defendant had been sitting. On August 10, 2006, Defendant appeared in Sixth Division District Court for arraignment and was ordered held on bail in the amount of $5,000 with surety. On that same date, Defendant was released on bail after paying a bondsman $250. Defendant's case was continued to October 12, 2006, for a pretrial conference.

**Condition #2: Defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**

Defendant failed to submit the required supervision report forms for the months of July, August, and September 2006, which were due August 5, September 5, and October 5, 2006, respectively.

**Condition #3: Defendant shall answer truthfully all inquires by the probation officer and follow the instructions of the probation officer.**

Defendant failed to follow the probation officer's instructions by not reporting to the United States Probation Office on August 28 and September 13, 2006, as instructed on August 25 and September 8, 2006.

As to this violation, Defendant failed to contact the U.S. Probation Office as instructed. On August 25, 2006, U.S.P.O. King telephonically instructed Defendant to report to the U.S. Probation Office on August 28, 2006, at 11:00 a.m. Defendant failed to do so. A registered letter was mailed on September 8, 2006, to Defendant at his address of 78 Ford Street, Second

Floor, Providence, Rhode Island, with instructions to report to the U.S. Probation Office on September 13, 2006, at 10:00 a.m. Defendant failed to report as instructed.

**Condition #11: Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**

On August 10, 2006, Defendant was arrested by members of the Providence Police Department and charged with possession with intent to deliver cocaine, possession with intent to deliver marijuana, and driving without a license. Records show that on August 10, 2006, Defendant was released on bail from Sixth Division District Court to the community after his arraignment on these charges. As of October 6, 2006, Defendant had not notified the U.S. Probation Office of this arrest.

**B. Proceedings Re First Violation**

On October 10, 2006, Judge (now Chief Judge) Lisi ordered the issuance of a warrant for Defendant to appear to answer to the Petition. See First Petition at 2. The warrant was executed, and Defendant appeared before this Magistrate Judge on October 23, 2006. At that time Defendant was advised of the Petition and of the grounds for the alleged violation. Defendant requested one week to obtain private counsel, and the Court continued the hearing to October 30, 2006, for determination of attorney. Defendant was released on $10,000.00 unsecured bond. On October 30, 2006, Defendant appeared and requested another two weeks to secure representation. The Court granted this request, but cautioned that it would not be inclined to grant any further continuances and scheduled a further hearing on November 13, 2006. The November 13th hearing was subsequently rescheduled to November 22nd. On November 22, 2006, Defendant informed the Court that he could not afford private counsel, and the Court appointed the Federal Defender to represent him on the violation.

Assistant Federal Defender Mary McElroy requested a two week continuance in order to investigate matters relating to the violation. The Court granted this request, and the matter was continued to December 7, 2006.

At the hearing on December 7, 2006, Defendant waived a violation hearing and admitted that he had violated the terms of his supervised release as stated in the First Petition with the qualification that he had not possessed cocaine and marijuana with the intent to distribute as stated in the First Petition This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. The Government and the defense jointly recommended that Defendant attend a ninety day inpatient drug treatment program at the Spectrum Residential Drug Treatment Program (the "Spectrum facility") in Worcester, Massachusetts, and that the matter be continued to a date thereafter for the purpose of receiving sentencing recommendations. Counsel for the Government further stated that if Defendant successfully completed the treatment program, the Government would recommend a disposition for the First Violation which would not require that Defendant be incarcerated. The Court accepted the joint recommendation and continued the matter to March 12, 2007. Defendant was released with the added condition that he attend and complete a ninety day residential drug abuse treatment program at the Spectrum facility.

Following the hearing on December 7, 2006, the Court was notified by the Probation Office that the Spectrum facility had declined to accept Defendant because he had a serious lung condition. However, the Probation Office further advised that it had arranged for Defendant to enter the Gosnold Residential Drug Treatment Program (the "Gosnold facility") in Falmouth, Massachusetts, on December 11, 2006. Accordingly, on December

12, 2006, the Court entered an order modifying the conditions of Defendant's release by substituting the Gosnold facility for the Spectrum facility. See Order Modifying Condition of Release (Doc. #8) ("Order of 12/12/06"). The final sentence of the Order of 12/12/06 stated: "Defendant is ordered not to leave the Gosnold facility until he successfully completes the treatment program or obtains the permission of his probation officer." Id. at 2.

**II. The Withdrawn Violation**

On December 28, 2006, Chief Judge Lisi ordered the issuance of a warrant for Defendant after the Probation Office filed a Petition for Warrant for Offender Under Supervision dated December 28, 2006 (the "12/28/06 Petition" or the "Withdrawn Petition"). This petition stated that on December 27, 2006, Defendant had submitted a urine specimen which tested positive for cocaine and that he had been discharged from the Gosnold facility on December 28, 2006.

On January 5, 2007, Defendant appeared before the Court on the 12/28/06 Petition. Defendant's counsel requested a three week continuance in order to conduct an independent retest of the urine sample which allegedly showed that Defendant had used cocaine. The Government did not object to this request, and the matter was continued to January 26, 2007. Defendant was detained pending that hearing. On January 25, 2007, Defendant's counsel filed a motion to continue the hearing for an additional twenty days. See Motion to Continue Revocation Hearing (Doc. #12). The Court granted the Motion. See Order of 1/26/07 (Doc. #13).

The hearing was subsequently rescheduled twice, and Defendant next appeared before the Court on February 23, 2007. At that time, counsel for the Government informed the Court that the retest of Defendant's urine had come back negative. In light of this development, Counsel for the Government recommended that

Defendant be directed to reenter the Gosnold facility. The Court accepted this recommendation and released Defendant with the instruction that he should contact U.S.P.O. King on Monday, February 26, 2007, for instructions as to when and how he should report to the Gosnold facility. Prior to concluding the hearing, counsel for both the Government and Defendant acknowledged that as a result of the negative drug retest Defendant's status had reverted to that stated in the last two sentences of the Order of 12/12/06.[1] Thus, the Court treated the 12/28/06 Petition as having been withdrawn.

## III. The Second Violation

### A. Factual Basis

On March 19, 2007, the Probation Department filed the Second Petition, alleging that Defendant had violated the following conditions of supervision as stated below.

**Condition #7: While on supervision, Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.**

On March 6 and March 12, 2007, while a resident at the Gosnold facility, Defendant submitted urine specimens which tested positive for cocaine. Scientific Testing Laboratories, Inc., in Richmond, Virginia, analyzed his specimens and

---

[1] The last two sentences of the Order of 12/12/06 appear below:

> Accordingly, the Court hereby modifies the conditions of Defendant's release and substitutes the Gosnold facility for the Spectrum facility. **Defendant is ordered not to leave the Gosnold facility until he successfully completes the treatment program or obtains the permission of his probation officer.**

Order of 12/12/06 at 2.

determined them to be positive for cocaine.

**Special Condition: While on supervision, Defendant shall participate in an inpatient or outpatient substance abuse treatment program as approved by the United States Probation Department.**

On February 23, 2007, Defendant appeared before the Court and was released on condition that he re-enter and successfully complete the Gosnold Residential Drug Treatment Program. Defendant subsequently re-entered the Gosnold program, but on March 14, 2007, he left the program without permission.

**B. Proceedings Re Second Violation**

On March 14, 2007, Chief Judge Lisi ordered the issuance of a warrant after being notified that Defendant had left the Gosnold facility without permission. Seventeen months later, on August 14, 2008, Defendant appeared before this Magistrate Judge after being arrested on that warrant. At that time, the Court informed Defendant that the warrant had been issued because he had left the Gosnold facility without permission. New counsel, Attorney George West, was appointed to represent Defendant. Attorney West requested a continuance of two weeks in order to become familiar with the history of the case. The Court granted this request, and the matter was continued to August 29, 2008. Defendant was ordered detained pending that hearing.

At the hearing on August 29, 2008, Defendant was formally advised of the contents of the Second Petition and of his right to have a violation hearing. Defendant waived his right to a violation hearing and admitted to the violations in the Second Petition. After receiving sentencing recommendations from the Government and the defense, the Court took the matter under advisement.

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release is five years. A term of three years has already been imposed. Therefore, supervised release can be extended for up to two years, resulting in a total of five years.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than five years in prison if the offense that resulted in the term of supervised release was a class A felony. Here Defendant was on supervision for a Class A felony. Thus, he may not be required to serve more than five years imprisonment upon revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here five years), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade A violation.

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A violation, the court shall revoke supervision. Since

Defendant has committed a Grade A violation, the Court shall revoke supervision.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is five years. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of V at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade A violation with a

criminal history category of V, an imprisonment range of forty-six to fifty-seven months is warranted.[2]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

### Joint Recommendation By Government and Defense

Pursuant to an agreement reached with defense counsel, the Government recommended a sentence of twenty-three months imprisonment. While noting that this sentence is one-half of the low end of the guideline range, counsel for the Government explained that in light of all that had transpired it was best to dispose of this case and "move on." Defense counsel joined in this recommendation. Defense counsel additionally noted that Defendant had been detained for approximately two months[3] in connection with the Withdrawn Petition and asked that a way be found for Defendant to be given credit for this time relative to the twenty-three month sentence being recommended.

### Court's Recommendation

In principle, the Court finds that the joint recommendation of the Government and the defense is appropriate. While a twenty-three month sentence is below the guideline range, the recommendation recognizes that the last two violations which brought Defendant before the Court were positive urine tests and

---

[2] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

[3] According to the docket, Defendant was initially ordered detained on the Withdrawn Petition on December 29, 2006, and released from custody on February 23, 2007.

leaving the Gosnold facility without permission. Unquestionably this conduct requires punishment, especially in light of the consideration which had been extended previously to Defendant by both the Court and the Government. However, a sentence greater than twenty-three months would be unduly harsh and greater than what is required for any deterrent or rehabilitative purpose.

With regard to the almost two months Defendant spent in detention in connection with the Withdrawn Petition, the Court concludes that the simplest way to deal with this issue is to reduce the recommended sentence by two months to twenty-one months. Although in most instances the Court would leave the determination of such matters to the Bureau of Prisons ("BOP"), here it appears that Defendant will not receive credit for the time spent in detention on the Withdrawn Petition. This is because the detention at issue predates the Second Violation.

The complexity of the proceedings relative to the First Violation, the Withdrawn Petition, and the Second Violation also weighs in favor of addressing this issue by reducing the recommended sentence from twenty-three months to twenty-one months. A clear statement that the Court has already considered the time Defendant spent in detention on the Withdrawn Petition will avoid post-sentencing complaints from him that he should be given credit for this time. Accordingly, I recommend that Defendant be sentenced to twenty-one months imprisonment and that the BOP be informed that he should not be given credit for any time spent in detention prior to August 14, 2008, the date on which he initially appeared on the Second Petition.

With regard to a further period of supervised release, neither the Government nor defense counsel requested that there be an additional period of supervised release. After consideration, the Court believes that a further period of supervision would serve no useful purpose. The Probation

Department has essentially exhausted its resources relative to Defendant. As those resources are limited, the Court concludes that they could be better utilized in efforts to assist other defendants.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of incarceration of twenty-one months and that there be no further period of supervised release. I further recommend that the BOP be advised that Defendant is not entitled to any credit for time spent in detention prior to August 14, 2008, because that was the initial date on which he was detained in connection with the Second Petition.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 10, 2008